CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/21/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| THOMAS E. HUNTER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:17CV25 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

Plaintiff Thomas E. Hunter filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Hunter alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC and conduct a function by function analysis; and (2) evaluate his credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Hunter's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hunter failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hunter filed for SSI on August 23, 2012, claiming his disability began on April 30, 2008, due to bulging and herniated disks, emphysema, panic and anxiety attacks, numbness in his extremities, high blood pressure, and depression.[2] R. 21, 63, 168. The state agency denied Hunter's application at the initial and reconsideration levels of administrative review. R. 63–74, 76–88. On October 8, 2015, ALJ William Barto held a hearing to consider Hunter's claims for SSI. R. 38–62. Hunter was represented by counsel at the hearing, which included testimony from vocational expert Tony Melanson.

On November 3, 2015, the ALJ entered his decision analyzing Hunter's claims under the familiar five-step process[3] and denying his claim for benefits. R. 21–31. The ALJ found that

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Hunter was born on May 15, 1962 and he was 53 years old on the date of the ALJ's decision, making him a "person closely approaching advanced age" under the Act. R. 26.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the

2

Hunter suffered from the severe impairments of obesity, degenerative disc disease, carpal tunnel syndrome, and open wound of the lower limb.[4] R. 23. The ALJ determined that these impairments, either individually or in combination, did not meet or equal a listed impairment. R. 25. In particular, the ALJ considered Listings 1.00(Q)(musculoskeletal system), 1.04(disorders of the spine), and 1.08(soft tissue injury), and noted that no treating or examining physicians recorded findings of the severity required to meet or equal a listed impairment. Id. The ALJ concluded that Hunter retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 25. Specifically, the ALJ found that Hunter can only occasionally climb, balance, stoop, kneel, crouch, crawl, be exposed to vibration and workplace hazards, and operate foot controls with his left lower extremity. Id. Further, Hunter must be able to change to a sitting position at will for up to five minutes as needed, to alleviate pain. Id. The ALJ determined that Hunter was unable to perform his past relevant work as a drywall mechanic, but that he could perform other jobs that exist in significant numbers in the national economy, such as cashier, office helper, and machine feeder. R. 29–30. Hunter appealed the ALJs' decision and the Appeals Council denied his request for review on January 23, 2017. R. 1–4.

## ANALYSIS

### A. Relevant Medical History

Hunter visited the emergency room on multiple occasions in 2012 complaining of hand numbness and pain and was diagnosed with carpal tunnel syndrome. R. 326, 328, 571, 576, 624–26. Hunter also complained of chronic low back pain. R. 572. A CT scan of his cervical spine in August 2012 was "essentially negative" with "some minimal degenerative changes." R. 527.

---

Commissioner finds that a claimant is disabled or not disabled at a step, the inquiry ends without proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

[4] The ALJ found that Hunter's hypertension, type II diabetes mellitus, affective disorder, anxiety disorder, and substance addiction disorder were non-severe impairments. R. 23–24.

3

Similarly, lumbar spine x-rays in May 2015 showed degenerative changes, not significantly changed compared to previous exams in 2010. R. 1348–49.

During this time frame Hunter visited the emergency room as a result of multiple accidents, including shooting himself in the foot.[5] In October 2012, Hunter presented at the emergency room with a gunshot wound to his left foot, which he indicated occurred accidentally while cleaning his shotgun. R. 665. Hunter had immediate surgery on his left foot, including partial amputations of his third and fourth toes and an open reduction internal fixation of his second toe. R. 674, 678, 682. Following the surgery, Hunter continued to complain of pain in his left toes, including phantom pain in his absent toes. R. 801, 817. On November 28, 2012, Hunter began physical therapy on his left foot, where he complained of swelling, pain, and trouble balancing. R. 904. In December 2012, Hunter underwent a skin graft on his left foot to speed up the healing process; however, the skin graft failed due to infection. R. 840, 915. Hunter continued with physical therapy into 2013, where he continued to complain of foot pain. R. 915, 920. Hunter was also treated at Carilion Clinic Pain Management Center, where he was prescribed Oxycodone, which helped to control his pain. R. 930, 944, 1146, 1151. However, in

---

[5] Events precipitating Hunter's other visits to the emergency room during this time period included being hit by a tree branch while cutting down a limb, falling down the stairs while carrying wood onto a porch in September 2012, stubbing his toe in November 2013, falling while trying to put on his underwear in December 2013, dropping a wood stove on his foot in February 2014, falling while stepping over a log while hunting in September 2014, and an injury while cutting wood when a log rolled onto his foot. R. 275, 356, 521, 527–29, 1243, 1266–67, 1255, 1288, 1297–1301. X-rays from these incidents showed no fracture. He was diagnosed with a concussion following the tree branch falling on his head, however, a CT scan of his brain and spine were negative, with some "minimal degenerative changes" present in his cervical spine. R. 527. In fact, Hunter went to the emergency departments at Bedford Memorial Hospital on August 25, 2012, and to Roanoke Memorial Hospital on August 26, 2012, complaining of pain related to the tree branch falling on his head. R. 521, 275. The medical notes from Roanoke Memorial Hospital emergency room indicate that, "[patient] does not have any sign of a recent injury to his scalp where he indicated that he was struck. Medical records indicates that he has had multiple orthopedic and surgical appointments for chronic right shoulder arm and hand pain with numbness [but] apparently has not follow[ed] up with many of the recommended testing." R. 279.

Hunter also presented to the emergency room with complaints of abdominal pain and chest pain in July 2012 and was diagnosed with pancreatitis and mild colitis. R. 320, 410, 418,500–01, 639. However, an EKG and chest x-ray was negative. R. 320–1.

June 2013, his pain management doctor refused to continue his Oxycodone, as during a recent incarceration and temporary detention order, Hunter reportedly "stated his wife had been taking his medications."[6] R. 1157. On September 28, 2013, Hunter was admitted to the open ward at Roanoke Memorial Hospital for suicidal thoughts and a history of depression and anxiety; he participated in group therapy and was discharged on October 8, 2013. R. 1333–37. On discharge, his diagnoses were major depressive disorder, severe, without psychotic symptoms, and substance use disorder, along with the issues of marital problems, homelessness, unemployment, and chronic pain. R. 1341.

State agency doctors James Wickham, M.D. and Thomas Phillips, M.D. performed a records review and both found that Hunter was capable of performing a limited range of light work.[7] R. 72, 86.

## B. RFC Findings and Function by Function Analysis

Hunter asserts that the ALJ's RFC findings are not supported by substantial evidence, arguing that the medical evidence establishes impairments that impose more restrictions than those found by the ALJ. Hunter argues that the ALJ failed to make any "specific findings regarding [his] inability to maintain a static work posture, his manipulative limitations, his need to [elevate his left leg] and lie down and rest during the day, or the frequency he would be absent from work . . . ." Pl.'s Br. at 27, Dkt. No. 15. According to Hunter, these errors resulted in a

---

[6] Hunter was incarcerated in June 2013, and failed to receive his regular medications for OxyContin and Xanax, resulting in agitation and hallucinations and requiring sedation and intubation at the hospital. R. 1043–45. At the hearing before the ALJ, Hunter testified:

> I did get addicted to the narcotics while I was on them and I don't want to be back there again, so I just kind of deal with the pain and go on without having to abuse any . . . opioids . . . .

R. 60.

[7] The ALJ gave great weight to the opinions of Drs. Wickham and Phillips. R. 28.

5

failure to present proper hypothetical questions to the vocational expert and a failure to conduct a function by function analysis.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings).. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding

6

the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Hunter asserts that the ALJ did not address how long he could stand before needing to sit down, or whether he would be able to remain on task while changing positions, even though Hunter testified that he can stand for only 5 to 10 minutes before needing to sit down. Hunter also asserts that, though the ALJ found his carpal tunnel syndrome was a severe impairment, the ALJ failed to address any manipulative limitations in the RFC. Finally, Hunter complains that the ALJ failed to address Hunter's need to elevate his foot during the day, due to ongoing swelling in his left foot.

In his opinion, the ALJ referenced Hunter's testimony at the hearing that he "spends six to seven hours a day with his foot elevated."[8] R. 26. The ALJ also noted the medical evidence of the self-inflicted accidental gunshot wound and resulting amputation of two toes, as well as other accidents, including being stepped on by a bull and dropping a stove on his foot. R. 27. However, the ALJ did not find Hunter entirely credible regarding the intensity of his symptoms. In support, the ALJ specifically noted that x-rays of his left foot in 2014 showed no fracture, and that an examination of his left foot in January 2015 showed no fracture and normal sensation and coordination. R. 27. Hunter's treatment, following the initial surgery from the traumatic injury, was conservative, and included physical therapy and pain medication. R. 28. Still, the ALJ accounted for Hunters left foot pain, finding the open wound of his lower limb a severe impairment, limiting him to only occasionally operating foot controls with his left lower extremity, and providing that he must be able to change to a sitting position at will for up to five

---

[8] Hunters actual testimony was, "Out of a 12 hour day I would say I spend a good [6 or 7] hours [with my foot elevated]. That's just an estimate off and on, you know, I've not really kept time of it." R. 51. Thus, Hunter's testimony concerned a 12 hour day, not a work day, did not indicate he required continuous elevation of his foot for any period of time, and was not an exact number.

7

minutes as needed, to alleviate pain. R. 25. At the hearing, the ALJ asked Hunter how long he could sit and stand before he needs to change positions, and Hunter ultimately responded that he "can sit for a couple hours sometimes" and can stand for about 5 or 10 minutes. R. 53. However, the ALJ did not establish the number of minutes Hunter must be able to sit or stand, instead indicating his job must permit him to change to a sitting position "at will." R. 53. Because Hunter would be permitted to change between sitting and standing "at will," the ALJ was not required to address how long Hunter would need to stand before sitting down.

    The ALJ also recognized Hunter's diagnoses of carpal tunnel syndrome, finding it to be a severe impairment; however, the ALJ noted that his medical treatment for carpal tunnel consisted of medication and icing his wrist. R. 27. The medical records show that Hunter first complained of right hand weakness at the Bedford Memorial Hospital Emergency Room on April 28, 2012. R. 571. He had presented for another problem and also stated that he had right hand numbness with tingling and constant non-radiating pain. He was diagnosed with carpal tunnel syndrome, but not otherwise treated. R. 571–775. A month later, at Lynchburg General Hospital, Hunter reported right arm tingling for a month following a fall. He was diagnosed with carpal tunnel syndrome, given medication, and discharged. R.323–26. Finally, on June 5, 2012, Hunter returned to Bedford Memorial Hospital with numbness throughout the entire right hand and complained that he could not pick up a pencil, make a fist, or extend his fingers. He was given a splint and instructed to apply ice and take Tylenol ES as needed for pain. R. 624–29. Hunter sought only sporadic treatment for his carpal tunnel syndrome, and was conservatively treated with medication, icing, and no surgery. No physician has limited Hunter's activities because of his hand issues or otherwise given an opinion that he carpal tunnel syndrome impacts his ability to engage in substantial gainful activity. Also, Hunter testified at the hearing that it was "mainly

8

[his] foot and [his] back" that prevented him from working. R. 47. The RFC restricted Hunter from exposure to vibration and workplace hazards such as moving machinery. Given the limited treatment Hunter had for carpal tunnel syndrome, the RFC adequately accounts for this impairment.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include an adequate summary of Hunter's medical records, Hunter's hearing testimony and the ALJ's conclusions. R. 25–31. I find that the ALJ's RFC findings are supported by substantial evidence.

## C. Credibility[9]

Hunter argues that the ALJ's credibility findings are not supported by substantial evidence. Hunter challenges the ALJ's finding that he was able to "live independently and care for himself," arguing that Hunter lives with his wife, who helps care for him, and that Hunter

---

[9] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Hunter's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider the claimant's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

testified that he was unable to stand long enough to help with household chores. Pl.'s Br. at 30, Dkt. No. 15, R. 50–51. Hunter further argues that the records cited by the ALJ of Hunter's attempts to work or perform other activities outside his restrictions were "solitary events that resulted in an exacerbation of [Hunter's] symptoms or new injuries." Pl.'s Br. at 30, Dkt. No. 15. Finally, Hunter disagrees that his "dramatic response to palpation" on January 22, 2015, discharge from the Bedford Christian Free Clinic due to behavior issues in July 2012, and standing briefly during the hearing, support the ALJ's conclusion that he is less than fully credible.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Hunter's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

The ALJ's opinion considered Hunter's medical history, as well as his allegations regarding his pain and symptoms. The ALJ noted Hunter's testimony in his opinion, including that his medications do not control his pain, that he spends 6 to 7 hours a day with his foot elevated, can no longer even walk a quarter of a mile to his mailbox, and would rather deal with his pain then abuse opioid pain medication.[10] R. 26, 50–51. However, the ALJ ultimately determined that Hunter was not fully credible, noting that he lives independently, cares for

---

[10] Hunter also testified that he mowed his grass on a riding lawnmower, and rode around with his landlord sometimes while his landlord did farm chores. R. 50.

himself, and his treatment notes show that he was participating in a number of activities beyond the degree of disability he alleges, including helping with hay, working on a loading dock[11], herding cattle, splitting wood, carrying a wood stove, and hunting. R. 26–27. An ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

    A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence or disturb his credibility finding. Therefore, I find that substantial evidence exists to support the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** Hunter's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED**

---

[11] Hunter points out that the record does not specify he was working on a loading docket, but rather indicates he "was helping a friend on a loading docket." R. 1356. While the record does not specifically state Hunter was *working*, it does state he "was helping a friend on a loading docket at Southern States" and "was jumping up on the loading dock," activities beyond his alleged degree of disability.

and this case is **DISMISSED** from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: March 21, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge